UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────

CARMEN VERGES,

                    Plaintiff,           05 Civ. 10473 (JGK)

         - against -                     MEMORANDUM OPINION
                                         AND ORDER
JO ANNE B. BARNHART, Commissioner of
Social Security,

                    Defendant.
─────────────────────────────────

JOHN G. KOELTL, District Judge:

     The plaintiff, Carmen Verges, brings this action pursuant
to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking reversal of a
final determination of the Commissioner of Social Security ("the
Commissioner") that she was not entitled to Supplemental
Security Income ("SSI") benefits.

     On July 26, 2006, the Commissioner moved to remand the case
for further administrative proceedings pursuant to sentence four
of § 405(g) on two grounds of legal error by the Administrative
Law Judge ("ALJ"):  First, the Commissioner acknowledged that
the ALJ erred in denying the plaintiff's claim without
recontacting the plaintiff's treating physician as required by
20 C.F.R. § 416.912(e).  Second, the Commissioner acknowledged
that the ALJ erred in relying on the testimony of the vocational
expert ("VE") without reconciling the conflict between that
testimony and the Dictionary of Occupational Titles ("DOT") as
required by Social Security Ruling ("SSR") 00-4p.  Accordingly,

1

the Commissioner requests that the ALJ's decision be reversed and remanded for further administrative proceedings.

In response, the plaintiff filed a cross-motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) seeking to reverse the Commissioner's determination and remand solely for calculation and payment of SSI disability benefits, or, in the alternative, to remand for further administrative proceedings with an order to the Commissioner to find the plaintiff "disabled" as of November 26, 2005, when she turned 50, or to find at least that she was in a borderline category at the time of the hearing and should thus be eligible for SSI benefits.  The plaintiff argues that there is no question that SSI disability benefits are warranted, and that the only question left to be resolved is the amount of benefits to which she is entitled.  The plaintiff's motion is based on her contention that the evidence clearly established that the plaintiff was disabled because of her inability to perform the standing and walking demands of light work.

The issues presented by these motions are whether the Commissioner's determination that the plaintiff was not disabled was based on legal error and if so, whether this case should be remanded for further administrative proceedings or remanded solely for the calculation of benefits based on this Court's finding of disability.

## I.

## A.

The plaintiff protectively filed an application for SSI disability benefits on July 8, 2002, in which she alleged physical and mental disabilities. (R. at 14, 71-73.) The plaintiff alleged that the disability began on June 1, 1986. (R. at 71.) Her application was denied on an initial review on October 11, 2002. (R. at 48-51.) At the plaintiff's request, a hearing was held on September 14, 2004. (R. at 22-45, 52.) The plaintiff appeared pro se before ALJ Mindy E. Landow and testified through a Spanish interpreter. (R. at 24, 26-27.) The ALJ considered the case de novo and after listening to the sworn testimony of the plaintiff and Edna Clark, a VE, and reviewing all the medical records that were submitted, issued a decision on July 18, 2005 finding that the plaintiff was not disabled under the Social Security Act (the "Act"). (R. at 11-21.) The ALJ found that while Verges had significant exertional and non-exertional limitations, she was able to perform light work. (R. at 15-20.) The ALJ determined that, based on the testimony of the VE, there were a significant number of jobs in the national and local economy available to the plaintiff. (R. at 19, 42.) The ALJ's decision became the final decision of the Commissioner on October 28, 2005, when the Appeals Council

denied the plaintiff's request for review.  (R. at 7-9.)  This action followed.

## B.

The administrative record contains the following facts. The plaintiff was born on November 26, 1955, in Puerto Rico. (R. at 27, 71.)  She came to the United States in 1979, after having attended two years of college in Puerto Rico.  (R. at 27.)  The plaintiff has two children, a daughter and a son.  (R. at 28.)  She is not able to read or write in English, and has a limited ability to understand and speak English.  (R. at 15, 27, 85.)  After coming to the United States, and until approximately 1980, the plaintiff worked as a factory assembly line worker. (R. at 29-30, 87, 104.)  She has had no reported earnings since 1980.  (R. at 74-76.)

The plaintiff protectively applied for SSI benefits on July 8, 2002.  (R. at 14, 46, 80, 127.)  At the hearing before the ALJ, the plaintiff testified that she was suffering from symptoms of depression and anxiety, high blood pressure, arthritis in her neck, heel spurs, and pain in her arms stemming from the arthritis, which impaired many of her daily activities. (R. at 30-40.)  The plaintiff had been seeing a psychiatrist and a physician, in addition to taking medication to help control the symptoms of these impairments.  (R. at 30-37.)

Edna Clark was present at the hearing, had reviewed the relevant records, and testified as a VE.  (R. at 24, 40-43, 54-55.)  The ALJ informed Clark that if at any time her opinion was at variance with the DOT, she should indicate and state the basis for the variance.  (R. at 42.)  At no time during her testimony did Clark indicate any variance between her opinion and the DOT.

Clark testified that Verges had no relevant work experience.  (Id.)  The ALJ asked Clark whether there were any jobs that could be performed by an individual of Verges' age, education, and lack of past relevant work experience and a limited ability to communicate in English, who is capable of performing light work but only simple, routine work with one- or two-step instructions in a supervised low-stress environment that requires few decisions, with limited reaching or extension of the upper extremities.  (Id.)  Clark testified that a hypothetical individual such as the plaintiff was capable of performing the work of a machine tender, DOT Occupational Code No. 616.685-054, for which there were 12,000 jobs in the national economy and 800 jobs locally, and a hand trimmer, DOT Occupational Code No. 781.687-070, for which there were 12,000 jobs nationally and 2,500 jobs locally.  (R. at 43.)  Finally, Clark testified that additional limitations on bending, stooping, twisting, squatting, crawling, climbing and balancing

would not affect the availability of jobs previously identified. (Id.)

The plaintiff's medical records show that Verges began receiving psychiatric care in 1987.  (R. at 109-110, 116-117.) The plaintiff first visited Fordham Tremont Community Mental Health Center ("Fordham") in 1992.  (R. at 109-110, 141-145.) In 1997 she began to receive regular care at Fordham, where she was seen approximately once a month for fifteen minute counseling sessions and received medications for depression, insomnia and anxiety.  (R. at 155-160, 162-254.)

At the time of the plaintiff's July 2002 application for SSI benefits, Verges remained in treatment.  Her quarterly treatment review notes from September 2002 through September 2004 indicate that the plaintiff was diagnosed by her treating psychiatrist with Axis I dysthymic disorder,[1] Axis III hypertension and obesity, and an Axis V Global Assessment of Functioning ("GAF") score of 60.[2]  (R. at 162-163, 207-216, 350-

---

[1] Dysthymic Disorder is a depressed mood disorder.  Diagnostic & Statistical Manual of Mental Disorders Fourth Edition Text Revision ("DSM-IV-TR") 376-81 (American Psychiatric Association 2000).

[2] The GAF scale ranges from zero to one-hundred and is rated with respect to "psychological, social and occupational functioning" on a hypothetical continuum of health-illness.  DSM-IV-TR 32.  The GAF scale does not take impairment in functioning due to physical or environmental limitations into account.  Id.  A GAF of 61-70 indicates "[s]ome mild symptoms [or] some difficulty in social, occupational or school functioning, but generally functioning pretty well and has some meaningful interpersonal relationships."  Id. at 34.  A GAF of 51-60 indicates "moderate symptoms [or] moderate difficulty in social, occupational or school functioning."  Id.

365.)  Continued therapy and medication were also recommended.
(See id.)  The treatment plans reflect that Verges received
prescriptions for Effexor, Atarax, Siroquel, Wellbutrin, Ambien
and Risperdal.  (R. at 163, 211, 215, 352, 355, 358, 361, 364.)

On October 4, 2004, the plaintiff's treating psychiatrist
completed an SSA form that assessed the plaintiff's mental
condition, indicating that Verges had a dysthymic disorder which
decreased her ability to focus, remember, and concentrate.  (R.
at 347-349.)  In describing the plaintiff's restrictions for
work-related mental activities, the treating psychiatrist opined
that the plaintiff was slightly limited in her abilities to
understand, remember, and carry out short, simple instructions
and to remember and understand detailed instructions, and
moderately limited in her ability to carry out detailed
instructions as well as to make work-related judgments.  (Id.)
The doctor stated that he was unable to assess the plaintiff's
ability to respond appropriately to supervision, co-workers, and
work pressures in a work setting.  (R. at 348.)

On October 14, 2002, an MRI of the plaintiff's right knee
performed at St. Barnabas Hospital ("St. Barnabas") revealed a
torn medial meniscus, joint effusion and osteochondral erosion
along the tibial plateau.  (R. at 343.)  On January 7, 2003, the
plaintiff had a right knee arthroscopy at St. Barnabas.  (R. at
300-333.)  Upon admission for the arthroscopy the plaintiff's

blood pressure was 117/74 and at discharge it was 120/80.  (R.
at 323.)  In April 2003 a peripheral vascular resistance
ultrasound revealed no significant vascular artery disease.  (R.
at 297.)  On May 9, 2003, the plaintiff had an endoscopic
plantar fasciotomy of the right foot as an outpatient at St.
Barnabas.  (R. at 259-296.)  At the plaintiff's evaluation for
the fasciotomy, her blood pressure was 112/86.  (R. at 292.)

On October 15, 2004, Dr. B. Carrero, the plaintiff's
treating physician, provided a medical report assessing Verges'
physical condition.  (R. at 383-387.)  The plaintiff's blood
pressure was 140/90.  (R. at 383.)  Dr. Carrero diagnosed the
plaintiff with hypertension, cervical radiculopathy, obesity,
and discogenic disease.  (R. at 383.)  He was prescribing
Flexeril, Naprosyn and Celebrex.  (Id.)  Based on the
plaintiff's impairments, Dr. Carrero indicated that the
plaintiff could occasionally lift and carry ten pounds, could
stand and/or walk for at least two hours in an eight-hour
workday, and could sit for about six hours in an eight-hour
workday.  (R. at 384-385.)  He reported that Verges was limited
in pushing and pulling with her upper and lower extremities due
to discogenic disease and trigger pain, and should "never"
engage in climbing, balancing, kneeling, crouching, crawling or
stooping.  (R. at 385.)  Dr. Carrero further reported that

Verges had "limited" reaching function and could only "occasionally" reach in all directions.  (R. at 386.)

The plaintiff received consultative psychiatric and physical examinations as part of her application for disability benefits, during which she was diagnosed with dysthymic disorder, hypertension, right knee derangement, right knee arthroscopy, and obesity.  (R. at 130, 390.)  On September 13, 2002, Dr. A. Delachapelle conducted a consultative psychiatric interview.  (R. at 129-130.)  Dr. Delachapelle noted that the plaintiff reported suffering from depression for over 17 years, that she had been in psychiatric outpatient treatment at Fordham and was being treated with medication, and that she had never been psychiatrically hospitalized or received emergency treatment for mental problems.  (See id.)  Dr. Delachapelle noted that "[i]n my opinion, the claimant has a satisfactory ability to understand, carry out, and remember instructions, and a satisfactory ability to respond appropriately to supervision, coworkers and work pressures, in a work setting."  (R. at 130.) Dr. Delachapelle's diagnosis was Axis I dysthymic disorder and Axis III hypertension and the plaintiff's prognosis was "fair." (Id.)

On December 9, 2004, Dr. Mandakini Patel performed a consultative orthopedic examination at the request of the SSA. (R. at 388-390.)  From his tests and observations of the

plaintiff, Dr. Patel came to the following conclusions:  the
plaintiff had (1) right knee derangement with limitation in
range of motion; (2) history of right knee arthroscopy; (3)
history of hypertension; and (4) obesity.  (R. at 390.)
Furthermore, Dr. Patel concluded that the plaintiff had a
"moderate impairment" in her ability to perform prolonged
sitting, standing, walking, bending and lifting secondary to
knee pain.  (Id.)

## II.

On July 18, 2005, on the basis of the medical evidence in
the record, the ALJ denied Verges' claim for disability
benefits.  (R. at 15-21.)  To determine if the plaintiff was
disabled, the ALJ applied the five-step inquiry defined by
regulations of the Commissioner.  See 20 C.F.R. § 416.920.  The
Court of Appeals for the Second Circuit has described this five-
step process as follows:

1.  The Commissioner considers whether the claimant is
    currently engaged in substantial gainful activity.

2.  If not, the Commissioner considers whether the
    claimant has a "severe impairment" which limits his
    or her mental or physical capacity to do basic work
    activities.

3.  If the claimant has a "severe impairment," the
    Commissioner must ask whether, based solely on
    medical evidence, the claimant has an impairment
    listed in Appendix 1 of the regulations.  If the
    claimant has one of these enumerated impairments,
    the Commissioner will automatically consider him

disabled, without considering vocational factors such as age, education, and work experience.

4.   If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5.   If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000) (internal citation omitted); see also Melville v. Apfel, 198 F.3d 45, 51 (2d Cir. 1999); Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir. 1995); Acevedo v. Barnhart, 05 Civ. 8117, 2007 WL 1982753, at *3-4 (S.D.N.Y. July 3, 2007).

The ALJ first determined that the plaintiff had no past relevant work experience, and had not engaged in substantial gainful activity since at least July 8, 2002. (R. at 15.)  At step two, the ALJ concluded that the plaintiff had a combination of severe physical and mental impairments, which imposed significant work-related limitations. (R. at 15-17, 20.)  The ALJ then determined, as required in step three, that the record did not contain documentation of any impairments or combination of impairments that met or equaled the level of severity of any impairment in Appendix 1, Subpart P, Regulations No. 4. (R. at 17.)  Because the plaintiff's impairments did not match any listed impairment in the Appendix, a residual functional

capacity assessment was therefore necessary.  See 20 C.F.R.
§ 416.920a(d)(3); Rosado v. Barnhart, 290 F. Supp. 2d 431, 437
(S.D.N.Y. 2003).

        The ALJ cited the October 15, 2004 report by the
plaintiff's treating physician, which indicated that the
plaintiff had been diagnosed with hypertension, cervical
radiculopathy, obesity and discogenic disease.  (R. at 16.)  The
ALJ noted that the treating physician concluded that Verges was
limited in her ability to lift and carry more than ten pounds,
occasionally, to sit more than two hours and stand or walk more
than six hours in an eight-hour work day,[3] and to reach in all
directions.  (R. at 17.)  The ALJ also cited the treating
physician's conclusion that the plaintiff was restricted from
pushing, pulling, climbing, balancing, kneeling, crouching,
crawling and stooping.  (Id.)  The ALJ then referred to the
December 9, 2004 report prepared by Dr. Patel.  The ALJ noted
that "Dr. Patel opined that the claimant has right knee
derangement with limitation in range of motion with a history of
arthroscopy, a history of hypertension, and obesity with a

---

        [3] The ALJ's representation of the treating physician's report with respect
     to the plaintiff's sitting, standing, and walking abilities is incorrect.
     The plaintiff's treating physician in fact reported that the plaintiff is
     limited in her ability to stand/walk for more than two hours in an eight-
     hour workday, and sit for more than six hours in an eight-hour workday.
     (R. at 384-385.)

moderate impairment in prolonged sitting, standing, walking, bending, and lifting." (Id.)

The ALJ stated that the plaintiff's treating physician's opinion "has been given careful consideration, but is not being given controlling weight inasmuch as it is not supported by the claimant's medical records," referring generally to the plaintiff's medical records from St. Barnabas. (Id.) The ALJ went on to note that "the treating physician's diagnosis of cervical radiculopathy and discogenic disease is not supported by any objective medical evidence." (Id.)

The ALJ then concluded that the plaintiff retained the ability to perform light work,[4] but proffered two conflicting conclusions with respect to the plaintiff's residual functional capacity. First, the ALJ concluded that the medical evidence established that the plaintiff "retains the ability to . . . sit for up to six hours, as well as stand and walk for up to two hours, in an eight hour work day." (Id.) The ALJ specifically noted that "notwithstanding the lack of objective medical

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

evidence as to [Verges'] physical condition, the above mentioned residual functional capacity accounts for the treating physician's opinion and the claimant's subjective complaints regarding the restrictions in her ability to use her arms." (R. at 17-18.) The ALJ went on to "conclude[] that [Verges] retains the ability to . . . sit, stand, and walk for six hours in a normal work day." (R. at 18 (emphasis added).)[5] The findings of the plaintiff's treating physician, which indicated that the plaintiff was able to do at best sedentary work because she was able to walk and stand between two hours and six hours in an eight-hour workday, would have precluded the ALJ's conclusion that the plaintiff had the residual functional capacity to perform light work.

In accordance with step four of the sequential disability evaluation, the ALJ noted that the plaintiff had no past relevant work experience within the meaning of the Act, and so the burden shifted to the Commissioner to demonstrate that other jobs existed in the national economy that the plaintiff could perform. (R. at 19.) In the fifth and final step of the evaluation, the ALJ deferred to the VE's findings regarding whether there were a significant number of jobs in the national

---

[5] At another point, in describing the hypothetical person that the ALJ described to the VE that was intended to describe the physical limitations of the plaintiff, the ALJ posited a person who could "sit for up to six hours, stand and walk up to two hours and lift and carry up to twenty pounds, occasionally." (R. at 19.)

economy that a hypothetical individual of Ms. Verges' "age, education, vocational background and limitations" could perform. (Id.)  The VE had testified that an individual such as the plaintiff could work as a machine tender or as a hand trimmer. (Id.)  The ALJ then consulted the medical vocational guidelines contained in 20 C.F.R. Pt. 404, Subpart P, App. 2, commonly referred to as "the grids"[6] and based on the fact that the plaintiff was a younger individual[7] with a high school education and two years of college education, limited English communication skills, no ability to read or write in English, no past work experience, and who could only engage in light work, concluded that the plaintiff was "not disabled" and therefore

---

[6] The grids classify work into five categories based on the exertional requirements of the different jobs.  Specifically, they divide work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling.  The grids take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience.  Residual functional capacity is an assessment of an individual's ability, despite her impairment, to meet physical, mental, sensory, and other demands of jobs based on all relevant evidence.  20 C.F.R. § 416.945; Ramos v. Apfel, 97 Civ. 6435, 1999 WL 13043, at *5 n.3 (S.D.N.Y. Jan. 12, 1999).  The grids indicate whether the claimant can engage in any other substantial gainful work that exists in the national economy.  Generally, the result listed in the grids is dispositive on the issue of disability.  However, the grids are not dispositive where they do not accurately represent a claimant's limitations because the claimant suffers from non-exertional limitations that significantly limit her capacity to work.  Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996); Garvin v. Barnhart, 254 F. Supp 2d 404, 409 (S.D.N.Y. 2003).

[7] "The term younger individual is used to denote an individual age 18 through 49."  20 C.F.R. Pt. 404, Subpart P, App. 2, § 201.00(h)(1).  During the period of eligibility between the plaintiff's initial application and the ALJ's decision, the plaintiff was between the ages of forty-six and forty-nine.

not entitled to SSI.  (Id.); see 20 C.F.R. Pt. 404, Subpart P,
App. 2, § 202.16.

## III.

A court may set aside a determination by the Commissioner
only if it is based on legal error or is not supported by
substantial evidence in the record.  See 42 U.S.C. §§ 405(g),
1383(c)(3); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.
1982).  A claimant seeking SSI benefits is considered disabled
if the claimant "is unable to engage in any substantial gainful
activity by reason of any medically determinable physical or
mental impairment which can be expected to result in death or
which has lasted or can be expected to last for a continuous
period of not less than twelve months."  42 U.S.C.
§ 1382c(a)(3)(A).[8]

The Commissioner concedes that the ALJ committed legal
error by failing to comply with the Commissioner's regulations
requiring the ALJ to recontact a medical source when the report
from the medical source does not appear to be based on medically
acceptable clinical and laboratory diagnostic techniques.  See

---

[8] The definition of disability for the purposes of disability insurance
benefits under Title II of the Act is similar.  See 42 U.S.C.
§ 423(d)(1)(A).  The determination of disability under Title II is also
similar to the determination of disability for purposes of SSI disability
benefits under Title XVI of the Act.  Ramos, 1999 WL 13043 at *4 n.1.
Cases under 42 U.S.C. § 423 are cited interchangeably with cases under 42
U.S.C. § 1382c(a)(3).  See Hankerson v. Harris, 636 F.2d 893, 895 n.2 (2d
Cir. 1980); Villanueva v. Barnhart, 03 Civ. 9021, 2005 WL 22846, at *4 n.5
(S.D.N.Y. Jan. 3, 2005).

20 C.F.R. § 416.912(e).  The Commissioner further concedes that the ALJ erred in failing to comply with the Social Security Ruling requiring the ALJ to reconcile any conflict between the VE's testimony and the information contained in the DOT before relying on the occupational evidence provided by the VE.  See SSR 00-4p, 2000 WL 1898704, at *2, *4 (S.S.A. 2000).  The Commissioner contends that these errors require a remand.  However the plaintiff argues that a remand solely for the calculation of benefits is required because the evidence of the plaintiff's physical impairments requires a finding of disability.  The plaintiff alternatively argues that a proper application of the grids would indicate that the plaintiff is disabled at least as of November 26, 2005, when she turned 50, and therefore this Court should find that she was disabled on that date, or at least that she was in a borderline category at the time of the hearing and that she should have been determined to be eligible for SSI benefits.

**A.**

The Commissioner concedes that the ALJ improperly rejected the conclusions of the plaintiff's treating physician, who opined that the plaintiff's exertional limitations restricted her ability to stand and walk for more than two hours in an eight-hour workday and lift or carry more than ten pounds.  The

plaintiff argues that while the ALJ did not accept the treating physician's opinion with respect to the diagnosis of cervical radiculopathy and discogenic disease, the ALJ nevertheless accepted the treating physician's assessment regarding Verges' ability to stand and walk because it was based on objective findings, and thus both the ALJ's findings and the treating physician's opinion limit the plaintiff to sedentary work.

Before making a final determination according to the five-step process outlined above, the ALJ had an affirmative duty to develop the medical record adequately.  See 20 C.F.R. § 416.912(d); see also Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999); Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996) (holding that where there are deficiencies in the record, the ALJ is under an affirmative obligation to develop the relevant medical history).  The duty to assist a claimant in obtaining her medical records "carries particular importance" in light of the well-established "treating physician rule," which requires the ALJ to grant controlling weight to the opinion of the plaintiff's treating physician if the opinion is well supported by medical findings and not inconsistent with other substantial evidence.  Rosa v. Callahan, 168 F.3d 72, 78-79 (2d Cir. 1999); Jones v. Apfel, 66 F. Supp. 2d 518, 538 (S.D.N.Y. 1999) (report of the Magistrate Judge adopted by district court); see also 20

C.F.R. § 416.927(d); Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

This duty is particularly important when, as in this case, the claimant is unrepresented at the hearing before the ALJ. See Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990) ("When the claimant appears pro se, suffers ill health and is unable to speak English well . . . we have a duty to make a searching investigation of the record to make certain that the claimant's rights have been adequately protected." (internal quotations and citations omitted)); Rosado, 290 F. Supp 2d at 438.  As one court has explained:

> [W]hen the claimant appears pro se, the combined force of the treating physician rule and of the duty to conduct a searching review requires that the ALJ make every reasonable effort to obtain not merely the medical records of the treating physician but also a report that sets forth the opinion of that treating physician as to the existence, the nature, and the severity of the claimed disability.

Peed v. Sullivan, 778 F. Supp. 1241, 1246 (E.D.N.Y. 1991); see also 20 C.F.R. § 416.912(e) ("We will seek additional evidence or clarification from your medical source when the report from your medical source . . . does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.").

In this case, the ALJ failed to develop fully the record in accordance with her affirmative duty to seek complete medical

information.  See Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998) ("[E]ven if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] sua sponte." (internal quotations and citations omitted)).  The ALJ noted in her report that the treating physician's opinion "is not being given controlling weight inasmuch as it is not supported by the claimant's medical records" (referring generally to the plaintiff's records from St. Barnabas), and further noted "that the treating physician's diagnosis of cervical radiculopathy and discogenic disease is not supported by any objective medical evidence." (R. at 17.) The ALJ did not recontact the plaintiff's treating physician for any objective or clinical findings he may have had to support his opinion as required by 20 C.F.R. § 416.912(e).  The Commissioner concedes that without examining the bases for the treating physician's opinion, the ALJ was in no position to reject the primary physician's medical opinion.  See Rosa, 168 F.3d at 80 (quoting Clark, 143 F.3d at 118); see also Devora v. Barnhart, 205 F. Supp. 2d 164, 172-73 (S.D.N.Y. 2002) ("The duty of the ALJ to develop the record is particularly important when it comes to obtaining information from a claimant's treating physician.").  If asked, the plaintiff's treating physician might have been able to offer clinical findings in support of his conclusions or provide a sufficient explanation for any

20

seeming lack of support for his findings.  <u>See</u> <u>Rosa</u>, 168 F.3d at 80; <u>Clark</u>, 143 F.3d at 118.  Under the Commissioner's regulations, the failure of the ALJ to recontact the plaintiff's treating physician was legal error.  It presents a serious gap in the record which requires remand.[9]

### B.

In addition to failing to recontact the plaintiff's treating physician, the Commissioner concedes that the ALJ committed a second error under SSR 00-4p.  This error also requires remand for a rehearing.

SSR 00-4p imposes upon an ALJ an "affirmative responsibility" to identify and obtain a reasonable explanation for any conflicts between a VE's testimony regarding the requirements of a specific job and the information provided in the <u>DOT</u>, which, with the companion publication <u>Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles</u> ("SCO"), is the primary source of job requirements relied upon in making disability determinations.

---

[9] The plaintiff's argument that the ALJ accepted the treating physician's assessment because it was based on objective findings is unsupported by the record.  The ALJ mistakenly described the treating physician's opinion as finding that the plaintiff could stand and walk more than six hours, while the treating physician opined that the plaintiff was limited in her ability sit more than six hours and stand and walk more than two hours.  (R. at 17-18, 384-87.)  The ALJ also explicitly stated that several of the treating physician's diagnoses were not supported by any objective medical evidence.  (R. at 17.)  Therefore the Commissioner correctly asserts that the ALJ rejected the treating physician's medical opinion because it lacked objective support.

SSR 00-4p, 2000 WL 1898704 at *2.  These publications are used at steps four and five of the sequential evaluation process. Id.

In this case, the VE testified that a hypothetical individual of the plaintiff's age, education, lack of relevant work experience, and physical capabilities would be able to perform the job of a machine tender, DOT Occupational Code No. 616.685-054, and a hand trimmer, DOT Occupational Code No. 781.687-070, jobs of which there are significant numbers in the national and local economy.  The hypothetical individual considered by the VE, as described by the ALJ, was only "capable of performing light work . . . with limited reaching or extension of the upper extremities." (R. at 19, 42 (emphasis added).)  However according to the DOT, both jobs require significant reaching.  DOT § 616.685-054 (4th ed. 2000), WL DICOT 616.685-054 (frequent reaching); DOT § 781.687-070 (4th ed. 2000), WL DICOT 781.687-070 (constant reaching).  Although the ALJ asked the VE to alert her to any variances between her testimony and information contained in the DOT, the VE did not do so.  (R. at 42.)

SSR 00-4p requires that when there is an apparent unresolved conflict between the VE evidence and the DOT, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE evidence to support a decision about whether

22

the claimant is disabled.  SSR-4p, 2000 WL 1898704 at *2; see also Mendez v. Barnhart, 05 Civ. 10568, 2007 WL 186800, at *13 (S.D.N.Y. Jan. 23, 2007).  Neither the DOT nor the VE evidence automatically "trumps" when there is a conflict.  SSR 00-4p, 2000 WL 1898704 at *2.  The ALJ must resolve the conflict by determining if the explanation given by the VE is reasonable and provides a basis for relying on the VE testimony rather than the information contained in the DOT.  Id.  The ALJ must then explain in her determination or decision how she resolved the conflict.  Id.  In this case the ALJ erred in relying on the VE's evidence at step five of the sequential evaluation without resolving the conflict between the VE's testimony and the DOT.

Remand is appropriate where, as here, "'further findings or a clearer explanation for the decision'" would help to assure the proper disposition of Verges' claim.  Pratts, 94 F.3d at 39 (quoting Berry, 675 F.2d at 469); see also Metaxotos v. Barnhart, 04 Civ. 3006, 2005 WL 2899851, at *7 (S.D.N.Y. Nov. 3, 2005) ("The appropriate remedy when faced with an ambiguous finding is to remand the case to the Commissioner for clarification of the ambiguity.").  Where the conflict between the VE's testimony and the DOT was not explored or explained on the record, a remand solely for the calculation of benefits would not be appropriate on the current incomplete record, and further findings may support the Commissioner's decision.

23

C.

Upon a finding that an administrative record is incomplete or that an ALJ has applied an improper legal standard, the Court of Appeals for the Second Circuit has instructed that the district court should generally remand the matter to the Commissioner for further consideration.  See Rosa, 168 F.3d at 82-83 ("Where there are gaps in the administrative record or the ALJ has applied an improper legal standard, we have, on numerous occasions, remanded to the [Commissioner] for further development of the evidence." (internal quotation marks omitted)).

However, the plaintiff argues that a remand solely for the calculation of benefits is required because the evidence in the record conclusively establishes that the plaintiff is limited to sedentary work and is therefore entitled to a finding of disability.  Remand solely for the purpose of calculating benefits is appropriate

> "when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose."  If, on the other hand, the record would permit a conclusion by the [Commissioner] that the plaintiff is not disabled, the appropriate remedy is to remand for further proceedings rather than for the calculation of benefits.

Rivera v. Sullivan, 771 F. Supp. 1339, 1358-59 (S.D.N.Y. 1991) (quoting Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980));

see also Gold v. Sec'y of Health, Educ., and Welfare, 463 F.2d 38, 44 (2d Cir. 1972) (remand for calculation of benefits is appropriate where there are no "serious uncertainties or gaps in the record").  This is not a case where the record would permit only the conclusion that the plaintiff was disabled, nor is this a case where there are no serious uncertainties or gaps in the record.  The ALJ's failure to recontact the plaintiff's treating physician, when his opinion appeared to be unsupported by objective medical evidence, and the ALJ's failure to resolve or explain the conflict between the VE's testimony and the DOT, present serious uncertainties and gaps in the record which render a determination of disability inappropriate.[10]

The plaintiff argues that there would be no purpose served by a remand because the Commissioner has introduced no medical evidence or argument suggesting that on remand the Commissioner

---

[10] The plaintiff argues that her exertional limitations are so clear that no result other than a finding of disability would be possible.  She argues that it is plain that she lacks the ability to stand or walk for at least six hours, and that this is sufficient for a finding of disability.  See 20 C.F.R. § 416.967(b); SSR 83-10 (PPS-101), 1983 WL 31251, at *6 (S.S.A. 1983) ("the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour work day"); Vega v. Comm'r of Soc. Sec., 97 Civ. 6438, 1998 WL 255411, at *11 (S.D.N.Y. May 20, 1998) (same).  The ALJ appears to have relied upon an inaccurate definition of light work at some points in her decision and incorrectly stated that the treating physician found that the plaintiff had the ability to walk and stand for six hours, but it is unclear whether the ALJ would have accepted the treating physician's conclusion that the plaintiff could not walk and stand for six hours as well supported by medical findings.  Dr. Patel found that the plaintiff had a "moderate" impairment for prolonged sitting, standing and walking due to right knee pain, and there is no definition of what that means.  (R. at 390.)  Therefore it cannot be said that the record is so clear that no other finding than disability is warranted based on the plaintiff's exertional limitations.

would be able to show that Verges can perform the standing and walking demands of light work.  This argument is unpersuasive. It is the job of the ALJ--not a reviewing court--to check for errors and inconsistencies and resolve them during the administrative appeal process.  See Richardson v. Perales, 402 U.S. 389, 399 (1971) (faced with conflicting medical evidence, it is the duty of the trier of fact to resolve that conflict). Where both parties assert that the ALJ's decision is laden with contradictions and errors, remand is the appropriate remedy. Metaxotos, 2005 WL 2899851 at *6 ("When both parties agree that the ALJ's decision was flawed, remand is appropriate.")

Finally, the plaintiff argues that proper application of the grids would indicate that the plaintiff was disabled as of November 26, 2005 when she turned 50, or at least that she was in a borderline category at the time of the hearing because she was only four months shy of her 50th birthday and that she should have been determined to be eligible for SSI benefits pursuant to 20 C.F.R. § 416.963(b).[11]  Nonetheless, remand for further administrative proceedings is appropriate.  The finding of disability as of November 26, 2005 is beyond the period of disability in this case, which ran from July 8, 2002, when the

---

[11] 20 C.F.R. § 416.963(b) states, in relevant part, that "[i]f you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case."

plaintiff applied for disability benefits, to July 18, 2005 when the ALJ issued her decision.  It is for the Commissioner in the first instance to make the finding of disabled.  Even though the plaintiff was in a borderline age situation at the time of the ALJ decision, it is for the Commissioner, not the Court, to decide whether it is more appropriate to use the higher age or the claimant's chronological age, and use of the higher age category is not automatic.  See SSR 83-10 (PPS-101), 1983 WL 31251 at *8 ("age categories are not applied mechanically in borderline situations" and "[n]o fixed guidelines as to when a borderline [age] situation exists are provided"); Metaxotos, 2005 WL 2899851 at *8 (remand, rather than a finding of disability by the court, was appropriate because the ALJ failed to identify whether borderline age situation existed and failed to address the implications of timing in her decision).  Thus, remand for further factual findings on this issue is appropriate.

## CONCLUSION

For the reasons stated above, the Commissioner's motion for remand is **granted**.  The plaintiff's cross-motion for judgment on the pleadings or for an order finding that the plaintiff is disabled and remanding solely for calculation of benefits is **denied**.  The Commissioner's determination is reversed and the

case is remanded pursuant to sentence four of 42 U.S.C.

§ 405(g).  The case is remanded to the Commissioner for further

administrative proceedings consistent with this Memorandum

Opinion and Order.  The Clerk is directed to enter Judgment and

to close this case.

SO ORDERED.

Dated:     New York, New York
           August 3, 2007

                                       John G. Koeltl
                              United States District Judge